**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| MARTIN DINEEN and MARIANNE DINEEN, *on behalf of themselves and all others similarly situated*, | ) ) ) ) | No. 2:14-mn-00001-DCN No. 2:14-cv-03479-DCN |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| PELLA CORPORATION, | ) ) | **ORDER** |
| Defendant. | ) ) ) | |

This matter is before the court on a motion to dismiss filed by defendant Pella Corporation ("Pella"). The court grants in part and denies in part Pella's motion as set forth below.

## I. BACKGROUND

Plaintiffs Martin and Marianne Dineen ("the Dineens") began building their home in Ormond Beach, Florida in 2002. Compl. ¶ 3, 53. The Dineens purchased Pella Architect and Designer Series windows from a Pella distributor for installation in their home in 2003. Id. ¶ 53. The windows were installed in or about 2004. Id. In April 2005, the Dineens purchased additional windows from Pella which were delivered on July 11, 2005. Id. ¶ 54. In or about 2006, the Dineens noticed that the bottom of one of their windows was rotting. Id. ¶ 60. A Pella representative inspected the window and informed them that the sash seal had failed and agreed to replace the window but charged the Dineens for labor. Id. On other occasions, the Dineens informed Pella about water intrusion issues. Id. ¶ 61. Pella replaced some of the sashes, and the Dineens paid

1

installation charges.  Id.  Several of the Dineens' windows are currently experiencing problems with water intrusion and wood rot.  Id. ¶ 62.

The Dineens contend that the windows suffer from various design deficiencies, including "a defect in the glazing pocket, the aluminum cladding, the crank hardware and the frame to sash joint."  Id. ¶ 35.  They allege that due to these design defects, water is permitted to be trapped between the aluminum and the operable wood frame.  Id.  This causes damage to the windows and other property within the home, and permits leaks.  Id.  The Dineens further allege that Pella knew, or but for its negligence should have been aware, of the defect when it shipped the windows.  Id. ¶ 45.

On August 13, 2014, the Dineens filed a class action complaint against Pella in the United States District Court for the Middle District of Florida, alleging jurisdiction based on diversity of citizenship.  The complaint brings the following ten causes of action:  (1) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); (2) negligence; (3) negligent misrepresentation; (4) breach of implied warranty of merchantability; (5) breach of implied warranty of fitness for a particular purpose; (6) breach of express warranty; (7) fraud; (8) fraudulent concealment; (9) unjust enrichment; and (10) declaratory relief.

On August 28, 2014, the United States Judicial Panel on Multidistrict Litigation transferred the Dineens' case to this court as part of the consolidated multidistrict litigation.  Pella filed the instant motion to dismiss on October 14, 2014.  The Dineens opposed the motion on November 4, 2014, and Pella replied on November 24, 2014.  The motion has been fully briefed and is ripe for the court's review.

## II.  STANDARDS

### A.    Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted."  When considering a Rule 12(b)(6) motion to dismiss, the court must "accept[] all well-pleaded allegations in the plaintiff's complaint as true and draw[] all reasonable factual inferences from those facts in the plaintiff's favor."  Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief."  Id. at 679.  A complaint must contain sufficient factual allegations in addition to legal conclusions.  Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  "Facts pled that are 'merely consistent with' liability are not sufficient."  A Soc'y Without a Name v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

### B.    Applicable Law

Because this case was filed in federal court and predicated on diversity jurisdiction, it is governed by state substantive law and federal procedural law.  Gasperini

v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996). "In multidistrict litigation, the law of the transferee circuit governs questions of federal law." In re KBR, Inc., 736 F. Supp. 2d 954, 957 (D. Md. 2010) modified on reh'g sub nom. In re KBR, Inc., Burn Pit Litig., 925 F. Supp. 2d 752 (D. Md. 2013) vacated and remanded on other grounds, 744 F.3d 326 (4th Cir. 2014); see also In re Gen. Am. Life Ins. Co. Sales Practices Litig., 391 F.3d 907, 911 (8th Cir. 2004); Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993); In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1176 (D.C. Cir. 1987); cf. Bradley v. United States, 161 F.3d 777, 782 n.4 (4th Cir. 1998) (applying Fourth Circuit law to questions of federal law in a case transferred from the Fifth Circuit). Therefore, this court must apply Florida substantive law and Fourth Circuit procedural law.

## III.  DISCUSSION

Pella contends that the Dineens' claims should be dismissed in their entirety, arguing that they are barred by their respective statutes of limitations and that they are inadequately pleaded. The court will first address issues regarding the statute of limitations applicable to each claim. To the extent necessary, the court will then consider arguments regarding the substance of the claims.

### A.    Statute of Limitations

#### 1.    Tolling

Pella contends that all of the Dineens' claims are barred by their respective statutes of limitations. While the specific statute of limitations for each claim will be discussed below, the court first addresses three doctrines which the Dineens argue toll, or otherwise preclude the application of, all relevant statutes of limitations:  class action tolling, fraudulent concealment, and equitable estoppel.

4

### a.    Class Action Tolling

The Dineens argue that the filing of a previous class action in a separate federal court, Saltzman v. Pella Corporation (N.D. Ill. No. 06-4481), tolled all relevant statutes of limitations during the pendency of that action.

The doctrine of class action tolling was first announced in American Pipe & Constr. Co. v. Utah, 414 U.S. 538 (1974).  In American Pipe, the Supreme Court held that an applicable statute of limitations is tolled during the pendency of a class action for putative class members who intervene after the denial of class certification—at least where certification is denied for failure to meet the numerosity requirement of Federal Rule of Civil Procedure 23.  Id. at 552–53; see also id. at 554 ("[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.").  The Supreme Court has extended the American Pipe rule to purported members of the class who later file individual suits rather than intervene.  Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 350 (1983).

The American Pipe decision, however, applies only to a "subsequently filed federal question action . . . during the pendency of a federal class action."  Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999) (citing American Pipe, 414 U.S. at 552–53); see also Vincent v. Money Store, 915 F. Supp. 2d 553, 560–61 (S.D.N.Y. 2013) ("The American Pipe case concerned the tolling of claims under a federal statute, the Sherman Act.  It did not purport to announce a rule that would apply to state law claims. . . . The plaintiffs cannot rely on American Pipe to toll the statutes of limitations

for their state law claims.  The plaintiffs must look to any state analogue to <u>American Pipe</u> tolling rather than <u>American Pipe</u> itself.").

Therefore, the court must determine whether Florida law would toll the statutes of limitations during the pendency of the <u>Saltzman</u> federal class action.  As an initial matter, Fla. Stat. § 95.051 appears to preclude the application of class action tolling.  This statute "delineates an exclusive list of conditions that can 'toll' the running of the statute of limitations."  <u>Major League Baseball v. Morsani</u>, 790 So. 2d 1071, 1075 (Fla. 2001). "Implicit in the court's holding [in <u>Major League Baseball</u>] is the conclusion that in order for a doctrine to 'toll' the statute of limitations, it must be included in the exclusive list of conditions set forth in section 95.051(1)."  <u>HCA Health Servs. of Fla., Inc. v. Hillman</u>, 906 So. 2d 1094, 1100 (Fla. Dist. Ct. App. 2004).  The commencement of a class action is not included among the tolling conditions listed in § 95.051.  This omission strongly suggests that class action tolling is not recognized under Florida law, especially in light of the statutory language following § 95.051(1), which states:  "[a] disability or other reason does not toll the running of any statute of limitations except those specified in this section, s. 95.091, the Florida Probate Code, or the Florida Guardianship Law."  Fla. Stat. § 95.051(2).

Furhter, other courts have interpreted § 95.051 to preclude the use of class action tolling.  In <u>Becnel v. Deutsche Bank, AG</u>, the Second Circuit applied § 95.051 and determined that "Florida does not allow tolling during the pendency of class action lawsuits no matter where they are filed."  507 F. App'x 71, 73 (2d Cir. 2013).  The Second Circuit declined one party's request to certify the question to the Florida Supreme Court, noting that the "Florida statute seems quite clear."  <u>Id.</u> at 73 n.1.  The D.C. Circuit

6

interpreted § 95.051 similarly, finding that "[t]he Florida legislature has enumerated eight scenarios in which the applicable statute of limitations is tolled, and a pending class action is not one of them." In re Vitamins Antitrust Litig., 183 F. App'x 1, 2 (D.C. Cir. 2006).

The Dineens argue that § 95.051 does not bar the application of class action tolling because at least one Florida court has applied American Pipe tolling to Florida cases. See City of St. Petersburg v. Dayco Products, Inc., 2008 WL 5428172, at *3 (S.D. Fla. Dec. 30, 2008) (finding a genuine issue of fact as to whether the plaintiffs' claims were tolled under American Pipe). However, St. Petersberg is not controlling because it contains no discussion of whether Florida law contains an analogue to American Pipe but instead appears to hold that American Pipe directly applies to the state law claims.[1] See id. at *2–3 ("Plaintiffs, in turn, argue that all of their claims are tolled under [American Pipe] by the pendency of . . . a putative nationwide class action [filed in Alabama state court].").  This is contrary to Fourth Circuit precedent, which requires courts to look to a state law analogue, rather than American Pipe itself, to toll state law claims. Wade, 182 F.3d at 288–289 (holding that Virginia's law on equitable tolling, not American Pipe, applied to plaintiff's state law claims).

The Dineens also cite Sacred Heart Health System, Inc. v. Humana Military Healthcare Services, Inc., a Florida district court opinion in which the court, after analyzing two Florida Supreme Court cases, held that while neither case "expressly used the term 'equitable tolling' nor cited American Pipe, the effect of [their holdings] was to equitably toll the statute of limitations so that the putative class members could pursue

---

[1]        The court also notes that the St. Petersburg court did not address whether § 95.051 precluded the application of American Pipe tolling.

7

individual claims in spite of § 95.051." 2008 WL 2385506, at *2 (N.D. Fla. June 9, 2008). However, the two cases on which the court relied in Sacred Heart—Engle v. Liggett Grp., Inc., 945 So. 2d 1246, 1277 (Fla. 2006), and Lance v. Wade, 457 So. 2d 1008, 1011 (Fla. 1984)—do not discuss class action tolling or § 95.051. The cases simply allowed putative class members to file their individual state law claims within a certain period following the dissolution of a class action. Engle, 945 So. 2d at 1277; Lance, 457 So.2d at 1011. Moreover, even if the courts in Engle and Lance adopted class action tolling, they certainly did not adopt cross-jurisdictional class action tolling, which would be required to toll the statutes of limitations in this case given that the Saltzman action was filed in the Northern District of Illinois. The Sacred Heart court even acknowledged that "[c]ases involving cross-jurisdictional tolling provide less justification for tolling." Sacred Heart, 2008 WL 2385506, at *3 n.9.

Therefore, the court finds that Florida law does not allow for cross-jurisdictional class action tolling, and that the statutes of limitations for the Dineens' claims were not tolled by the pendency of Saltzman.

### b.    Fraudulent Concealment[2]

The Dineens also argue that the statutes of limitations are tolled by Pella's fraudulent concealment of the defect.

"Fraudulent concealment can toll the running of a statute of limitations when the fraud perpetrated upon the injured party places him in ignorance of his right to sue."

---

[2]    The court notes that, like class action tolling, fraudulent concealment does not fit within one of the categories enumerated in § 95.051(1). Nevertheless, in Major League Baseball, the Florida Supreme Court determined that "the overwhelming weight of legal authority supports the conclusion that section 95.051 does not trump the doctrine of equitable estoppel" and that equitable estoppel, including fraudulent concealment, is not a tolling doctrine, and therefore not within the scope of § 95.051. Major League Baseball, 790 So. 2d at 1078–80. Thus, while certain courts appear to dispute the application of the word "toll," Florida law clearly recognizes that fraudulent concealment, and equitable estoppel generally, prevent the running of a statute of limitations.

Wirt v. Cent. Life Assur., Co., 613 So. 2d 478, 479 (Fla. Dist. Ct. App. 1992) (citing

Nardone v. Reynolds, 333 So. 2d 25 (Fla. 1976)).  "Fraudulent concealment requires the

defendants to engage in the willful concealment of the cause of action using fraudulent

means to achieve that concealment." Raie v. Cheminova, Inc., 336 F.3d 1278, 1282 n.1

(11th Cir. 2003) (citing Berisford v. Jack Eckerd Corp., 667 So. 2d 809, 811 (Fla. Dist.

Ct. App. 1995)).  To establish fraudulent concealment, a claimant must allege and

establish: "(1) successful concealment of the cause of action; (2) fraudulent means to

achieve that concealment; and (3) [that the] plaintiff exercised reasonable care and

diligence in seeking to discover the facts that form the basis of his claim." Burr v. Philip

Morris USA Inc., 2012 WL 5290164 (M.D. Fla. Sept. 28, 2012) (citing Berisford, 667

So. 2d at 811–12).  The "fraudulent means" alleged must go beyond mere non-disclosure

and must constitute active and willful concealment.  Raie, 336 F.3d at 1282 n. 1;

Nardone, 333 So. 2d at 39; Licul v. Volkswagen Grp. of Am., Inc., 2013 WL 6328734, at

*6 (S.D. Fla. Dec. 5, 2013) (holding that allegations that defendant had not warned its

consumers or plaintiffs of a defect were "wholly insufficient to supply the affirmative

steps taken to prevent [p]laintiffs from discovering the basis of their claims that would be

necessary before tolling based on fraudulent concealment becomes appropriate").

The Dineens point to Philip Morris USA, Inc. v. Naugle, 103 So. 3d 944, 947

(Fla. Dist. Ct. App. 2012) to show that fraudulent concealment may be established

through "statements or omissions."  However, in Naugle the plaintiff alleged that the

defendant's initial omission of material information was followed by years of public

statements which concealed the material information.  See Naugle, 103 So. 3d at 947 n.4,

948 (finding a jury issue as to whether plaintiff justifiably relied on the false controversy

9

created by the tobacco industry).  Thus, <u>Naugle</u> does not disturb the conclusion that "a claim of mere 'nondisclosure'" is "legally insufficient to toll the statute of limitations [under Florida law]."  <u>Speier-Roche v. Volksw Agen Grp. of Am. Inc.</u>, 2014 WL 1745050, at *7 (S.D. Fla. Apr. 30, 2014) (citing <u>Licul</u>, 2013 WL 6328734, at *17–18).

The complaint does not sufficiently allege that Pella took any "affirmative steps to prevent [the Dineens] from discovering the basis of their claims."  <u>See</u> <u>Licul</u>, 2013 WL 6328734, at *6.  To be sure, the complaint contains a number of conclusory assertions to that effect.[3]  Compl. ¶¶ 198–99, 204–05.  However, the only specific fact alleged in connection with such conclusions is that the Dineens are unaware of anything "in Pella's advertising, publicity or marketing materials that disclosed [the defect]."  <u>Id.</u> ¶ 204.  Such non-disclosures do not constitute the "fraudulent means" required to establish fraudulent concealment.  <u>See</u> <u>Licul</u>, 2013 WL 6328734, at *6.

Therefore, the court finds that the Dineens have failed to plead facts necessary to show that the relevant statutes of limitations were tolled by Pella's fraudulent concealment.

### c.     Equitable Estoppel

The Dineens also argue that equitable estoppel prevents their claims from being barred by their respective statutes of limitations.

---

[3]     The court notes that, apart from their substantive insufficiency, the Dineens' claims also lack the particularity required under Fed. R. Civ. P. 9(b).  Fraudulent concealment claims are "subject to Fed. R. Civ. P. 9(b)'s requirement that the circumstances constituting fraud shall be stated with particularity.  Under Rule 9(b), the circumstances of the fraud must be alleged with specificity, i.e. the 'who, what, when, where, and how' of the alleged fraud."  <u>Speier-Roche</u>, 2014 WL 1745050, at *7 (S.D. Fla. Apr. 30, 2014) (quoting <u>Greenberg v. Miami Children's Hosp. Research Inst., Inc.</u>, 264 F. Supp. 2d 1064, 1073 (S.D. Fla. 2003)).  Thus, bare allegations that Pella fraudulently "concealed and/or intentionally failed to disclose" material information are clearly insufficient to establish fraudulent concealment.

The Dineens' allegation that "when questioned about wood rot, Pella would claim faulty installation, excessive moisture in the home, or would deny the claims as 'out of warranty' without disclosing the defect," Comp. ¶ 24, comes somewhat closer to the mark.  However, because the complaint gives no indication as to who at Pella made such claims, when such claims were made, or how Pella knew those claims were false, it is also lacks the particularity required to state a claim under Rule 9(b).

Equitable estoppel only applies when a plaintiff is aware that he has a cause of action during the limitations period, but forbears from bringing suit because of the defendant's misrepresentations.  Spadaro v. City of Miramar, 855 F. Supp. 2d 1317, 1329 (S.D. Fla. 2012); Black Diamond Props., Inc. v. Haines, 69 So. 3d 1090, 1093–94 (Fla. Dist. Ct. App. 2011).  "The doctrine of equitable estoppel is inapposite" when "[p]laintiffs do not allege that they knew they had a cause of action, but failed to comply with the statute of limitations because they relied on fraudulent representations made by [d]efendants that led them to delay filing suit."  Black Diamond Properties, 69 So. 3d at 1094.

Here, the Dineens' allegations of equitable estoppel are based on a failure to disclose the alleged defect.  See Compl. ¶ 72 ("Given Pella's failure to disclose . . . the defective nature of the [w]indows . . . Pella is estopped from relying on any exception regarding any statutes of limitation.").  They do not allege that they knew about the defect but delayed filing the suit due to Pella's misrepresentations.  See id. (admitting that the Dineens "could not have known in the exercise of reasonable diligence that the [w]indows were defective").

Therefore, the court finds that equitable estoppel does not prevent the statutes of limitations from running.

### 2.    Accrual

Having determined that the statutes of limitations for the Dineens' claims were not tolled by any of the doctrines discussed above, the court now turns to the question of whether each claim's specific statute of limitations has run.

### a.     Count I—FDUTPA Claim

"The statute of limitations on a FDUTPA claim expires four years from the date of sale of the product at issue." <u>Licul</u>, 2013 WL 6328734, at *6 (citing Fla. Stat. § 95.11(3)(f)). The Dineens purchased the last of their windows in 2005. Compl. ¶ 54. Therefore, the statute of limitations expired in 2009, nearly five years before the plaintiffs filed suit.

The Dineens argue that the court cannot measure the statute of limitations from the time of the last window purchase, because the continuing tort doctrine applies to their FDUTPA claim.[4] Pls.' Resp. 3–4.

Torts that are continuing in nature are subject to the continuing tort doctrine. <u>Seaboard Air Line R. Co. v. Holt</u>, 92 So. 2d 169, 170 (Fla. 1956). "Where the [continuing tort] doctrine applies, a plaintiff may recover damages for tortious acts committed within the limitations period prior to the filing of suit." <u>Suarez v. City of Tampa</u>, 987 So.2d 681, 685 (Fla. Dist. Ct. App. 2008) (citations omitted). A continuing tort is "established by continual tortious <u>acts</u>, not by continual harmful effects from an original, completed act." <u>Id.</u> at 686 (citing <u>Horvath v. Delida</u>, 540 N.W.2d 760, 763 (Mich. App. 1995)) (emphasis in original). "When a defendant's damage-causing act is completed, the existence of continuing damages to a plaintiff, even progressively worsening damages, does not present successive causes of action accruing because of a continuing tort." <u>Suarez</u>, 987 So. 2d at 686 (quoting <u>In re Medical Review Panel for Claim of Moses</u>, 788 So. 2d 1173, 1183 (La. 2001)).

---

[4]     The Dineens also contend that the continuing tort doctrine applies to their negligence and negligent misrepresentation claims, Pl.'s Resp. 3–4. However, because the court finds that the complaint sufficiently alleges that these did not accrue until discovery and were therefore brought within their respective statutes of limitations, the continuing tort doctrine is not dispositive as to such claims and will therefore only be addressed in the FDUPTA context.

The Dineens have not straightforwardly alleged FDUPTA violations that occurred within the four years preceding the filing of this action. Instead, the Dineens contend that Pella has "engaged in continuous and purposeful wrongdoing by acting to cover up known defects in the [w]indows." Compl. ¶ 101.

 "Under section 501.211 of FDUPTA . . . a successful claimant is entitled only to 'actual damages.'" Kia Motors Am. Corp. v. Butler, 985 So. 2d 1133, 1140 (Fla. Dist. Ct. App. 2008). "FDUPTA 'actual damages' do not include consequential damages, such as repair damages or resale damages." Id. at 1140. Because the complaint indicates that the Dineens last purchased Pella's windows in 2005, the only damage caused by Pella's cover up would be consequential damages arising from the progressive wood rot, which are not recoverable under FDUPTA. Compl. ¶ 17, 54. Thus, the last "damage-causing act" recognized under FDUPTA occurred in 2005, and the continuing tort doctrine does not apply.

Therefore, the court finds that the statute of limitations has run on the Dineens' FDUPTA claim.

>>>> 
### b.    Counts II–VIII—Negligence, Negligent Misrepresentation, All Warranty Claims, and All Fraud-Based Claims

The Dineens' negligence, negligent misrepresentation, warranty, and fraud-based claims are all governed under either a four- or five-year statute of limitations. Fla. Stat. Ann. § 95.031(2)(b); Fla. Stat. Ann. § 95.031(3)(a); Fla. Stat. Ann. § 95.031(3)(c); Fla. Stat. Ann. § 95.031(3)(j). Most importantly, each of these statutes of limitations runs "from the date that the facts giving rise to the cause of action were discovered, or should have been discovered with the exercise of due diligence." Fla. Stat. Ann. § 95.031(2)(a)–(b). Therefore, the court must determine when the Dineens became aware of the facts

13

giving rise to each claim.  Since each claim is premised upon Pella's sale of defective windows, this inquiry focuses on when the Dineens discovered, or should have discovered, that their windows were defective.

The Dineens noticed damage to one of their windows in 2006.  Compl. ¶ 60. Around that time, a Pella representative inspected the window and informed the Dineens that the sash seal had failed.  Id.  Pella contends that because the Dineens were told that the sash seal failed on the damaged window in 2006, they have been aware of the defect since at least that time.  Def.'s Reply 4.  For the window that was damaged in 2006, the statute of limitations has clearly run for each of the Dineens' claims.  However, the Dineens contend that the failure of a single window was not sufficient to put them on notice of a design defect affecting the entire supply of windows.  Hr'g Tr. 35:11–36:20.

Florida courts have held that "where the manifestation [of the defect] is not obvious but could be due to causes other than an actionable defect, notice as a matter of law may not be inferred."  Snyder v. Wernecke, 813 So. 2d 213, 217 (Fla. Dist. Ct. App. 2002) (quoting Performing Arts Ctr. Auth. v. Clark Const. Grp., Inc., 789 So. 2d 392, 394 (Fla. Dist. Ct. App. 2001)).  For the purposes of this motion to dismiss, where the court must draw all reasonable factual inferences in the Dineens' favor, there is no reason to think the failure of a single sash seal should have led the Dineens to suspect, much less discover, a product-wide design defect.  Pella argues that the Dineens should have realized the nature of the defect based on Pella's replacement of the window under the express limited warranty in 2006 because that warranty does not cover "extraneous causes of window failure," such as improper installation.  Def.'s Reply 4.  However, the fact that the limited warranty only covers defects in "materials or workmanship," Def.'s

14

Mot. Ex. 3, does not necessarily show that the Dineens should have realized the scope of the defect in 2006. Based on the facts alleged in the complaint, the Dineens could have reasonably thought that their 2006 window damage was the result of an isolated defect.

Therefore, the court finds that the Dineens' negligence, negligent misrepresentation, warranty, and fraud-based claims are not barred by their respective statutes of limitations.

### c.     Count IX—Unjust Enrichment

Under Florida law, a claim for unjust enrichment is subject to a four-year statute of limitations. Fla. Stat. 95.11(3)(k). "[U]njust enrichment claims accrue at the time the alleged benefit is conferred by the plaintiff on the defendant and the defendant accepts such benefit." Merle Wood & Assocs. Inc. v. Trinity Yachts, LLC, 2011 WL 845825, at *6 (S.D. Fla. Mar. 7, 2011) (citations omitted).

The Dineens allege that they "conferred a benefit on [Pella] when they purchased the [w]indows," Compl. ¶ 212, and failed to provide further information on the statute of limitations argument in their response.

Therefore, the court finds that the Dineens' unjust enrichment claim is barred by the statute of limitations.

### B.     Negligence

Pella argues that the Dineens' negligence claim fails because it violates the economic loss rule. Def.'s Mot. 22.

Florida recognizes the economic loss rule, "a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." Tiara Condo. Ass'n, Inc. v. Marsh & McLennan

15

Companies, Inc., 110 So. 3d 399, 401 (Fla. 2013).  Economic losses are defined as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property."  Id.

The Dineens contend that the economic loss rule does not apply to their claim because they have alleged damage to other property, such as "the structure of their home, wall cavity, adjoining finishes and walls[,] and [] other personal property within the home."  Compl. ¶ 58.  Pella argues that the Dineens' allegation of damage to "other personal property" is conclusory and insufficient to plead around the economic loss doctrine.  Def.'s Mot. 22.

Pella relies on In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Products Liab. Litig., No. 8:11-cv-02785, 2013 WL 139520 (D.S.C. Jan. 10, 2013) to support its argument.  In Building Materials Corp., the plaintiff alleged that:

> Cracked shingles cause water to leak past the shingles, which in turn causes damage to property owned by [p]laintiff and class members other than the shingles themselves (including other roofing material, the roof itself, structural elements, interior walls and ceilings, and building contents).

Id. at *5.  The court characterized this and similar allegations as "conclusory statements concerning speculative and hypothetical damage," and found that "[w]ithout any allegation of actual injury to property" the plaintiff's claims were barred by the economic loss rule.  Id.

Thus, the allegations in Building Materials Supply were not simply vague, but also unduly speculative.  This speculative element distinguishes the Building Materials Supply case from the case at hand.  The Dineens' complaint, though certainly vague, does allege that actual damages have occurred.  See Compl. ¶ 58 ("The [w]indows

16

allowed water to intrude into [p]laintiff's [sic] home resulting in other property damage . . . such as . . . [damage to] other personal property within the home."). This courts has found similarly vague allegations to be sufficient, as long as they "sufficiently notify [the defendant] as to the specific category of loss allegedly suffered by the plaintiffs." See In re: MI Windows & Doors, Inc. Products Liab. Litig., 908 F. Supp. 2d 720, 725 n.2 (D.S.C. 2012) (recognizing In re MI Windows & Doors, Inc. Products Liab. Litig., No. 2:12-cv-02238, 2012 WL 4761435, at *3 (D.S.C. Oct. 3, 2012) and In re MI Windows & Doors, Inc. Products Liab. Litig., No. 2:12-cv-01256, 2012 WL 4846987, at *5 (D.S.C. Oct. 11, 2012), in which complaints alleging damage to "personal property" were found sufficient to avoid the economic loss rule).

Therefore, the court finds that the Dineens' allegation of damage to "other personal property" is sufficient to avoid the economic loss rule and survive the instant motion to dismiss.[5]  The court notes, however, that the claim fails to the extent the Dineens seek recovery in negligence for damage to the windows themselves.

### C.    Negligent Misrepresentation

Pella argues that the Dineens' negligent misrepresentation claim fails because it does not satisfy the requirements of Rule 9(b).[6]  Def.'s Mot. 25.

---

[5]    Pella also argues that the structure of the home, wall cavity, finishes, and walls do not constitute "other property" under the economic loss rule.  Def.'s Mot. 23.  Because the court finds the allegation of damage to "other personal property within the home" to be dispositive, the court does not address the sufficiency of the Dineens' allegations regarding other parts of the home.

[6]    While the court recognizes that federal courts in the transferor district regularly apply Rule 9(b) to negligent misrepresentation claims under Florida law, see, e.g., Linville v. Ginn Real Estate Co., LLC, 697 F. Supp. 2d 1302, 1306 (M.D. Fla. 2010) ("Rule 9(b) applies to claims for negligent misrepresentation under Florida law because negligent misrepresentation sounds in fraud."), because "the law of the transferee circuit governs questions of federal law," In re KBR, Inc., 736 F. Supp. 2d 954, 957, the court must determine whether the Fourth Circuit would also apply Rule 9(b) to such claims.  Though the Fourth Circuit declined to apply Rule 9(b) to a negligent misrepresentation claim under Maryland law in Baltimore Cnty. v. Cigna Healthcare, that opinion was unpublished and is therefore not binding.  238 F. App'x 914, 921 (4th Cir. 2007).  Prior to and following Cigna Healthcare, district courts have applied Rule 9(b) to negligent misrepresentation claims arising under other states' laws.  See Topshelf Mgmt., Inc. v. Campbell-

Florida has adopted the Restatement (Second) of Torts' formulation of negligent misrepresentation, which states that:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Gilchrist Timber Co. v. ITT Rayonier, Inc., 696 So. 2d 334, 337 (Fla. 1997) (citing Restatement (Second) of Torts § 552 (1977)); see also Baggett v. Electricians Local 915 Credit Union, 620 So.2d 784 (Fla. Dist. Ct. App. 1993) (listing the following elements of a negligent misrepresentation claim: "(1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation").

Rule 9(b) provides that a party alleging fraud "must state with particularity the circumstances constituting fraud." See Linville, 697 F. Supp. 2d at 1306 ("Rule 9(b) applies to claims for negligent misrepresentation under Florida law because negligent misrepresentation sounds in fraud."). This rule ensures that defendants have adequate notice of the conduct complained of, protects them from frivolous suits, eliminates fraud

---

Ewald Co., 2015 WL 4621859, at *4–5 (M.D.N.C. Aug. 3, 2015) (applying the Rule 9(b) to negligent misrepresentation claims arising under North Carolina law); Walters v. Pella Corp., No. 2:14-cv-00544, 2015 WL 2381335, at *9 (D.S.C. May 19, 2015) (applying Rule 9(b) to negligent misrepresentation claims arising under Nevada law); Pitten v. Jacobs, 903 F. Supp. 937, 951 (D.S.C. 1995) (applying Rule 9(b) to negligent misrepresentation claims arising under South Carolina law). The court also notes that the Dineens do not dispute the applicability of Rule 9(b), but simply argue that they have satisfied its requirements. Given the practice of courts in this circuit, the established position of other federal courts that have addressed such claims, and the parties' agreement on the issue, the court will assess the adequacy of the Dineens' negligent misrepresentation allegation under the standards required by Rule 9(b).

actions in which all the facts are learned after discovery, and protects defendants from harm to their goodwill and reputation. Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir.1999) (citation omitted). In order to satisfy Rule 9(b), the complaint must allege the "who, what, when, where and how of the alleged fraud," U.S. ex rel. Ahumada v. NISH, 756 F.3d 268, 280 (4th Cir.2014), or the "first paragraph of any newspaper story." Great Plains Trust Co. v. Union Pac. R.R. Co., 492 F.3d 986, 995 (8th Cir. 2007); see also U.S. ex rel. Elms v. Accenture LLP, 341 F. App'x 869, 872 (4th Cir. 2009) (holding Rule 9(b) requires a plaintiff to allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby").

Here, the Dineens have not pleaded any affirmative misrepresentations with the particularity required under Rule 9(b). Each of the Dineens' allegations contend that "Pella" made various "misrepresentations and omissions of material facts," Compl. ¶¶ 29, 123, though the complaint indicates that the Dineens' actual purchase was made on the recommendation of their builder and made from Robert Hunt Corporation, a Pella distributor. Id. ¶¶ 53, 55. This makes it unclear which party actually communicated the alleged misrepresentations to the Dineens. Even assuming the alleged misrepresentations were made by Pella, the complaint does not indicate which Pella employee or document supplied the misrepresentations. Moreover, there is no indication of the time or place where such misrepresentations were made. Id. ¶ 123. Therefore, to the extent the Dineens' negligent misrepresentation claim is premised on affirmative misrepresentations, it is not pleaded with the specificity required under Rule 9(b).

The Dineens also allege that Pella negligently misrepresented material facts by omission.  Id.  Negligent misrepresentation can occur through an omission of material information, if the omitting party owes a duty of disclosure to the plaintiff.  Kahama VI, LLC v. HJH, LLC, 2013 WL 6511731, at *6 (M.D. Fla. Dec. 12, 2013).  "A duty to disclose arises when one party has information that the other party has a right to know because of a fiduciary or other relation of confidence between them."  Id.

Rule 9(b) operates somewhat differently when evaluating claims based on omissions.  Breeden v. Richmond Cmty. Coll., 171 F.R.D. 189, 195 (M.D.N.C. 1997) (recognizing that the usual Rule 9(b) requirements "work[] well for cases of affirmative misrepresentations because such are discrete, observable events which can be particularized," while "fraud by omission . . . is by its very nature, difficult to plead with particularity" (quoting  Daher v. G.D. Searle & Co., 695 F.Supp. 436, 440 (D. Minn. 1988)).  In order to plead fraud by omission in compliance with the pleading requirements of Rule 9(b), "a plaintiff usually will be required to allege the following with reasonable particularity:"

> (1) the relationship or situation giving rise to the duty to speak, (2) the event or events triggering the duty to speak, and/or the general time period over which the relationship arose and the fraudulent conduct occurred, (3) the general content of the information that was withheld and the reason for its materiality, (4) the identity of those under a duty who failed to make such disclosures, (5) what those defendant(s) gained by withholding information, (6) why plaintiff's reliance on the omission was both reasonable and detrimental, and (7) the damages proximately flowing from such reliance.

Id.

The Dineens' allegations satisfy the requirements of Rule 9(b) with respect to their claims for negligent misrepresentation by omission.  The complaint alleges that the Dineens had a contractual relationship with Pella in which Pella "was in a position to

provide guidance . . . and acted in an advisory capacity regarding the quality, fitness and usefulness of its windows."[7]  Compl. ¶ 122.  It is clear from this allegation regarding the nature of Pella's duty to speak that the Dineens contend this duty was created by the their purchase of the windows.  Despite this duty, the Dineens allege that Pella "took no action to: (1) inform owners of the defects; (2) recall the [w]indows or (3) otherwise repair the [w]indows."  Id. ¶ 26.  The complaint also makes clear that the Dineens were likely to be misled by the omission, as they had no reason to suspect such a defect and could not have discovered it through reasonable inspection.  Id. ¶¶ 18, 56.  Finally, the complaint alleges that, as a result of the alleged omissions, the Dineens were induced to purchase the windows and where damaged thereby.  Id. ¶¶ 129–31.

Therefore, the court finds that, to the extent the Dineens negligent misrepresentation claim relies on Pella's omissions, the Dineens have pleaded their claim with sufficient particularity to satisfy Rule 9(b).

### D.    Implied Warranty Claims

Pella argues that the Dineens' implied warranty claims fail for a lack of privity.  Def.'s Mot. 26.  It also argues that the claim for breach of the implied warranty of fitness for a particular purpose should be dismissed because the windows were used for their ordinary purpose.  Id. at 27.

---

[7]    Under Florida law, a duty to speak "arises when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them."  Kahama, 2013 WL 6511731, at *6.  The requisite relationship may be "confidential, contractual, or fiduciary" in nature.  TransPetrol, Ltd. v. Radulovic, 764 So. 2d 878, 880 (Fla. Dist. Ct. App. 2000).  Drawing all reasonable inferences in the Dineens' favor, the court is satisfied that the Dineens have sufficiently alleged that Pella had a duty to speak under Florida law.

### 1.    Privity

"Under Florida law, privity of contract is an essential element of a claim for breach of implied warranty."  Bailey v. Monaco Coach Corp., 168 F. App'x 893, 894 (11th Cir. 2006) (citing Mesa v. BMW of N. Am., LLC, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005)).  Recently, a Florida district court determined that "[l]iteral privity can be finessed by a proxy: direct beneficiary or third-party beneficiary status."  Sanchez-Knutson v. Ford Motor Co., 2014 WL 5139306, at *10 (S.D. Fla. Oct. 7, 2014) (citing In re Masonite Corp. Hardboard Siding, 21 F. Supp. 2d 593, 599 (E.D. La. 1998); Warren v. Monahan Beaches Jewelry Ctr., Inc., 548 So. 2d 870 (Fla. Dist. Ct. App. 1989)).  The Sanchez-Knutson court denied the defendant's motion to dismiss based on the plaintiff's allegation that "[t]he dealers were not intended to be the ultimate consumers of the subject vehicles, [the dealers] have no rights under the warranty agreements provided by [the defendant,]" and "[defendant]'s warranties were designed for and intended to benefit the consumers only."  Id.

Pella contests the application of Sanchez-Knutson under these circumstances, because the Dineens did not purchase the windows directly from the Pella distributor while the plaintiff in Sanchez-Knutson was the actual purchaser of the product from a third-party dealer.  Def.'s Reply 13; Id. at *1.  Instead, the Dineens purchased a house, and the builder of the house purchased the windows from the Pella distributor.  Def.'s Reply 13.

However, this distinction seems trivial as it does not undermine Sanchez-Knutson's rationale that the ultimate consumer of the product is the intended beneficiary of any implied warranties and should therefore be able to bring a claim for breach of such

warranties.  See Sanchez-Knutson, 2014 WL 5139306, at *10 (denying motion to dismiss where complaint alleged that plaintiff, not dealer, was intended to be the ultimate consumer).  Though the Dineens did not purchase their windows directly from the dealer, they nevertheless acquired the windows through a purchase by their builder.  The Dineens were just as much third party beneficiaries to the contract between their builder and the distributor as they were to any contract between Pella and its distributor.  This extra layer of "proxies" between the Dineens and Pella does not alter the rationale for recognizing an implied warranty claim, because the Dineens were always the intended consumers and, thus, ultimate beneficiaries of each proxy transaction.

Therefore, the court finds that the Dineens' implied warranty claims do not fail for lack of privity.

### 2.    Particular Purpose

The implied warranty of fitness for a particular purpose arises "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods."  Fla. Stat. § 672.315.

> A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

Id. cmt. 2.

Though the existence of a particular purpose is usually regarded as a "question of fact to be determined by the circumstances of the contracting," Fla. Stat. Ann. § 672.315

cmt. 1, courts have occasionally determined the absence of a particular purpose as a matter of law. See Royal Typewriter Co., a Div. of Litton Bus. Sys. v. Xerographic Supplies Corp., 719 F.2d 1092, 1100 (11th Cir. 1983) (holding as a matter of law that leasing, as opposed to selling, copiers was not a particular purpose to which the protections of § 672.315 attach).

In this case, the Dineens' complaint alleges that the windows were "purchased for the particular purpose of being installed at [p]laintiffs' and the [c]lass [m]embers' properties." Compl. ¶ 142.[8] Installing windows into buildings is not an especially peculiar or particular use. To the contrary, it appears to be quite an ordinary use. Does anyone connected to this litigation know of any other use for a window? Perhaps Pella has a "Windows Hall of Fame" housing a collection of free standing windows, but the court is unaware of such a tourist attraction. A review of the Dineens' complaint reinforces this finding. The court notes that the Dineens make no mention of how Pella was alerted to this supposed "particular purpose." See id. (simply stating that "Pella knew and had reason to know that its [w]indows were being purchased for [a particular purpose]"). Normally, how the seller learned of the buyer's particular purpose is crucial to a claim for breach of implied warranty of fitness for a particular purpose. See Pavletic v. Bertram Yacht, Inc., 2011 WL 3475394, at *7 (S.D. Fla. Aug. 9, 2011) ("A plaintiff

---

[8]        In their response, the Dineens claim that their allegations relate to the windows' "installation in specific locations in their structures, in accordance with the specific building codes and standards applicable thereto." Pls.' Resp. 26. However, this allegation never appears in their complaint, and "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Fieger v. Supreme Court of S.C., No. C/A 3:10-1038, 2010 WL 3521606, at *4 (D.S.C. Aug. 16, 2010) (quoting Myland Labs., Inc. v. Akzo, 770 F. Supp. 1053, 1068 (D. Md. 1991)). Therefore, the court will not formally consider this argument.
        Nevertheless, the court notes that, because the Dineens have not indicated how Pella was informed of the "specific locations" where its windows were used, it is doubtful that the court could find that the Dineens sufficiently pleaded facts showing that Pella knew of their particular purpose "at the time the sale was made." See Pavletic, 2011 WL 3475394, at *7.

must prove that the defendant, at the time the sale was made, knew of a particular purpose for which the goods were going to be used and that the plaintiff relied upon the defendant's skill and judgment when purchasing said product.").  Here, it is of course entirely plausible that Pella was aware that its customers intended to install the windows into their properties, but this only proves the absence of a particular purpose.  The very fact that Pella did not need to be specifically informed that the windows were intended to be used in buildings demonstrates that these are, in fact, ordinary purposes.

Therefore, the court finds that the complaint indicates that the windows were used for their ordinary purpose, and the Dineens have failed to sufficiently plead a claim for breach of the implied warranty of fitness for a particular purpose.

### E.     Express Warranty Claim

Pella advances several arguments for why the Dineens' express warranty claim should be dismissed.

First, Pella argues that the Dineens fail to allege that they read any of the statements in Pella's promotional materials upon which the express warranty claim is based.  Def.'s Mot. 28.  This argument is without merit.  To plead a breach of express warranty claim under Florida law, "a complaint must allege: (1) the sale of goods; (2) the express warranty; (3) breach of the warranty; (4) notice to seller of the breach; and (5) the injuries sustained by the buyer as a result of the breach of the express warranty."  Moss v. Walgreen Co., 765 F. Supp. 2d 1363, 1368 (S.D. Fla. 2011).  "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."  Fla. Stat. § 672.313(1)(a) (emphasis added).  "Statements made

in promotional materials, advertisements, and brochures may be sufficient to create an express warranty <u>if the buyer relies on those statements</u> in making his purchase." <u>Aprigliano v. Am. Honda Motor Co.</u>, 979 F. Supp. 2d 1331, 1341 (S.D. Fla. 2013) (emphasis added).

Pella does not cite to any Florida authority that requires a plaintiff to plead that they read the warranties. Such a requirement is logically subsumed under the reliance analysis because a plaintiff cannot rely on a warranty unless he had knowledge of it. The Dineens allege that the representations became a basis of the bargain. Compl. ¶¶ 30–31, 55, 158–160. Therefore, the fact that the Dineens did not plead that they read any of the promotional materials does not provide grounds for dismissing the express warranty claim.

Pella next argues that the alleged statements from Pella's Owners' Manual, Compl. ¶ 32, cannot constitute express warranties because the Owners' Manual accompanying the Dineens' windows did not contain any such statements. Def.'s Mot. 30, Exs. 10, 11. Instead, Pella contends, these statements come from a 2012 Pella brochure published years after the Dineens' windows were purchased. Def.'s Mot. Ex. 12. The Dineens do not respond to this argument or dispute the authenticity of the Owners' Manual and 2012 brochure attached to Pella's motion. Pl.'s Resp. 26–29. A review of said attachments supports Pella's argument.[9] Therefore, the court finds that the

---

[9]     Courts may consider a document not included in the complaint at the Rule 12(b)(6) stage when: (i) it was attached to the motion to dismiss, and is clearly integral to, and was relied upon in, the complaint; and (ii) the plaintiff does not dispute its authenticity. <u>Blankenship v. Manchin</u>, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Here, the alleged representations in the Owner's Manual clearly form part of the basis of the Dineen's express warranty claim, as the Dineens have cited to such representations to support their argument that their "express warranty claim fulfills all of the [required] elements, as it alleges that [Pella] . . . expressly represented in various contexts that the [w]indows were appropriate for their intended use, were free of defects, and complied with applicable building codes and industry standards." Pl.'s Resp. 27 (citing Comp. ¶ 32).

Dineens have failed to state a plausible claim for relief with respect to the alleged representations contained in the Owners' Manual.

Pella also argues that the Dineens do not state a claim for relief because they do not adequately allege that Pella breached the terms of the limited warranty that ships with the windows. Def.'s Mot. 28. The Dineens concede that this is true, but clarify that their express warranty claims are based on "separate affirmations" distinct from the limited warranty. Pls.' Resp. 29.

With respect to such "separate affirmations," Pella argues that the Dineens have not sufficiently pleaded the source and contents of the various representations giving rise to the express warranties. Def.'s Mot. 28. The Dineens contend that they have sufficiently pleaded such facts by alleging that Pella represented, "through its website, brochures, marketing materials, and representatives," that the windows were free from defects. Compl. ¶ 157; Pl.'s Resp. 27 (citing Compl. ¶¶ 29, 32, 55, 151, 155–57).

As discussed above, to survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). A plaintiff is required to provide the "'grounds' of his 'entitlement to relief'" which requires more than mere "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." Pegasus Imaging Corp. v. Allscripts Healthcare Solutions, Inc., 2009 WL 1767612, at *1 (M.D. Fla. June 23, 2009) (quoting Twombly, 550 U.S. at 545).

To state a claim for breach of warranty under Florida law, the plaintiff must allege: "(1) facts in respect to the sale of the goods; (2) type of warranty created; (3) facts in respect to the creation of that particular type of warranty; (4) facts of the breach of

warranty; (5) notice to seller of breach; and (6) injuries sustained by the buyer as a result of the breach of warranty." Pegasus Imaging, 2009 WL 1767612, at *2.

The Dineens' allegation that Pella represented that the windows were free from defects in their website and various marketing materials sufficiently indicates the type of warranty created and the way in which it was created. Compl. ¶ 175. By indicating the general nature and source of the alleged warranty, the Dineens have stated more than mere "labels and conclusions." See Bennett v. Skyline Corp., 2015 WL 1608848, at *3 (N.D.W. Va. Apr. 10, 2015) (denying motion to dismiss claim for breach of express warranty where plaintiffs' amended complaint alleged that "[defendant] warranted that their home 'would be delivered with the options, fixtures and components' they had selected or that were represented by [defendant]'s 'models, advertisements, and specifications'"); see also Pegasus Imaging, 2009 WL 1767612, at *2 (rejecting plaintiff's contention that defendants' counterclaim failed to allege conduct and/or circumstances that gave rise to implied warranties, where counterclaim alleged that plaintiff's offering and selling of product created implied warranty).

Therefore, the court finds that the Dineens have sufficiently pleaded a claim for breach of express warranty.

### F.    Fraud-based Claims

Pella argues that the Dineens' claim for fraud and fraudulent concealment fail to satisfy the pleading requirements of Rule 9(b), referring to its previous arguments used in the context of negligent misrepresentation and fraudulent concealment based tolling. Def.'s Mot. 31. Given the similarity between a claim for fraud and a claim for negligent misrepresentation, see Drilling Consultants, Inc. v. First Montauk Sec. Corp., 806 F.

Supp. 2d 1228, 1236 (M.D. Fla. 2011) (outlining the elements of each claim), the court

finds the discussion in section III.C. equally applicable to the Dineens' fraud-based

claims.

For the reasons outlined in that section, the court finds that the Dineens have

sufficiently stated claims for fraud and fraudulent concealment, but only to the extent

such claims are based on omissions of material fact.

### G.     Declaratory Relief

Pella argues that the Dineens' claim for declaratory relief fails because it lacks a

substantive foundation and because it is inappropriate at this time, as the merits of the

Dineens' substantive claims have yet to be decided.  Def.'s Mot. 33–34.

The Declaratory Judgment Act states that

> In a case of actual controversy within its jurisdiction . . . any court of the
> United States, upon the filing of an appropriate pleading, may declare the
> rights and other legal relations of any interested party seeking such
> declaration, whether or not further relief is or could be sought.

28 U.S.C.A. § 2201.  The Declaratory Judgment Act is intended to help parties resolve

legal disputes before either party can seek or has sought a coercive remedy through the

courts.  10B Charles Alan Wright & Arthur A. Miller, Federal Practice and Procedure §

2751 (3d ed. 1998).  Courts have "long recognized the discretion afforded to district

courts in determining whether to render declaratory relief."  Aetna Cas. & Sur. Co. v.

Ind-Com Elec. Co., 139 F.3d 419, 421–22 (4th Cir. 1998).

Declaratory relief is inappropriate at this stage, as the merits of the Dineens'

substantive claims have not been adjudicated.  See Kennedy v. MI Windows & Doors,

Inc., No. 2:12-cv-2305, 2013 WL 267853, at *6 (D.S.C. Jan. 24, 2013); F.D.I.C. v.

OneBeacon Midwest Ins. Co., 883 F. Supp. 2d 754, 761–62 (N.D. Ill. 2012) (dismissing a

declaratory relief claim that raised the same issue as a substantive legal claim already before the court); Vill. of Sugar Grove v. F.D.I.C., 2011 WL 3876935, at *9 (N.D. Ill. Sept. 1, 2011) ("We have discretion to decline to hear a declaratory judgment action and courts have exercised that discretion where a plaintiff seeks a declaratory judgment that substantially overlaps it substantive claims") (internal citations omitted); Monster Daddy LLC v. Monster Cable Prods., Inc., No. 6:10-cv-1170, 2010 WL 4853661, at *6 (D.S.C. Nov. 23, 2011) (dismissing three declaratory relief counterclaims because they "raise the same legal issues that are already before the court").

Therefore, the court dismisses the Dineens' claim for declaratory relief.

## IV.  CONCLUSION

For the foregoing reasons the court **GRANTS IN PART AND DENIES IN PART** Pella's motion to dismiss and **DISMISSES WITHOUT PREJUDICE** the Dineens' claims for FUDTPA violations; unjust enrichment; breach of implied warranty of fitness for a particular purpose; declaratory judgment; fraud-based claims to the extent they rely on affirmative representations; and negligent misrepresentation claim to the extent it relies on affirmative representations.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**October 30, 2015
Charleston, South Carolina**